**NEWPORT NEWS SHIPBUILDING
AND DRY DOCK COMPANY,**
Plaintiff,

v.

**EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, United Steelworkers of
America, AFL–CIO–CLC, and John
McNulty, Defendants.**

Civ. A. No. 80–20–NN.

United States District Court,
E. D. Virginia,
Newport News Division.

Feb. 25, 1981.

---

2. Cf. *Del Boring Tire Service v. FEMA*, 496 F.Supp. 616, 618 (W.D.Pa.1980).

Stephen T. Myking, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Shannon T. Mason, Jr., Mason, Gibson, Cowardin & Spencer, Newport News, Va., for plaintiff.

Leroy D. Clark, Gen. Counsel, Barbara L. Neilson, Anthony J. DeMarco, and Gloria J. Lett, Washington, D. C., for E.E.O.C.

Michael A. Rhine, Asst. U. S. Atty., Norfolk, Va., for defendants.

Richard J. Brean, Carl B. Frankel, Pittsburg, Pa., C. T. Neale, III, Hudgins & Neale, Newport News, Va., for Union & McNulty.

## AMENDED OPINION AND ORDER

CLARKE, District Judge.

On January 31, 1980, the plaintiff, the largest private employer in the Commonwealth of Virginia, filed a Complaint seeking a declaratory judgment and a permanent injunction against the Equal Employment Opportunity Commission's (EEOC) implementation and enforcement of "Final Interpretive Guidelines" Numbers 21 and 22, interpreting the Pregnancy Discrimination Act, Public Law 95–555, 42 U.S.C. § 2000e–(k) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII), and against defendant United Steelworkers of America, AFL–CIO–CLC (Steelworkers) (the bargaining agent for many of the plaintiff's employees), and John McNulty, an employee, which have filed charges with the EEOC seeking enforcement, in effect, of these "Final Interpretive Guidelines" against the plaintiff. The plaintiff contends that the EEOC guidelines which would require the plaintiff to extend pregnancy-related benefits to spouses of male employees who are not themselves employees are ultra vires the statutory power of the EEOC, contrary to the intent of Congress, arbitrary, capricious, and not in accordance with law. The EEOC contends that its guidelines are in harmony with Title VII's prohibition against sex discrimination and are consistent with the legislative history of the Pregnancy Discrimination Act.

The defendant McNulty has filed a charge against the Shipyard complaining that his wife, who is not an employee of the Shipyard, has been denied pregnancy benefits under the Act.

### Background and Discussion

In 1976, the Supreme Court, in *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), held that it was not an unlawful employment practice within the proscription of Title VII of the Civil

Rights Act of 1964,[1] as amended, for an employer to provide a disability plan which provided non-occupational sickness and accident benefits to all employees but excluded from its coverage disabilities arising from pregnancy. In determining whether the plan offered by General Electric to its employees violated Title VII, the Court utilized the Equal Protection analysis of a previous Supreme Court decision, *Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974) and stated that, absent a showing of gender-based discrimination as that term was defined in *Geduldig*, or a showing of gender-based effect, there can be no violation of Title VII § 703(a)(1).

In *Geduldig*, the Supreme Court held that excluding pregnancy from a disability program established under California law did not constitute gender-based discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. The Supreme Court in *Gilbert* cited portions of the *Geduldig* decision:

> [T]his case is thus a far cry from cases like *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), and *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), involving discrimination based upon gender as such. The California insurance program does not exclude anyone from benefit eligibility because of gender but merely removes one physical condition—pregnancy—from the list of compensible disabilities. While it is, true that only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification like those considered in *Reed, supra*, and *Frontiero, supra*. Normal pregnancy is an objectively identifiable physical condition with unique characteristics. Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against

the members of one sex or the other, law-makers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition.

> The lack of identity between the excluded disability and gender as such under this insurance program becomes clear upon the most cursory analysis. The program divides potential recipients into two groups—pregnant women and non-pregnant persons. While the first group is exclusively female the second includes members of both sexes.

429 U.S. at 134–135, 97 S.Ct. at 407–408 citing *Geduldig*, 417 U.S. at 496–497 n.20, 94 S.Ct. at 2492 n.20. Thus, in *Gilbert* the Supreme Court, using the analysis establish in *Geduldig*, found that General Electric's exclusion of pregnancy-related disabilities from coverage in a disability plan did not constitute discrimination on the basis of gender and did not create a gender-based discriminatory effect in violation of Title VII.

On October 31, 1978, Congress, in response to the Supreme Court's decision in *Gilbert*, enacted the Pregnancy Discrimination Act (PDA), Pub.L.No.95–555, which amended § 701 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, by adding the following subsection:

> (k) The terms "because of sex" or "on the basis of sex" include, but are not limited to, because or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work . . . .

---

1. Section 703(a) of Title VII of the Civil Rights Act of 1964, as amended provides:

It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . .

The clear legislative intent behind the PDA was to "insure that *working women* are protected against all forms of *employment discrimination* based on sex" as defined by subsection (k). S.Rep.No.331, 95th Cong. 1st Sess. July 6, 1977 p. 3 (emphasis added). The legislative history specifically states that the Act "does not change the application of Title VII to sex discrimination in any other way." *Id.* at 3. Furthermore, the legislative history of the PDA states explicitly that the Act does not reach the issue of dependents' benefits but that the question of dependents' benefits would have to be resolved using the existing principles of Title VII. *Id.* at 6.

After Congress passed the Pregnancy Discrimination Act, the EEOC issued final interpretive guidelines in the form of questions and answers establishing and clarifying the position of the EEOC on the issue of dependents' benefits. *See* 44 Fed.Reg. 23804 (April 20, 1979). In adopting these guidelines, the EEOC recognized that the PDA did not resolve the question of dependents' benefits and it purported to utilize the existing principles of Title VII in establishing its position. *See* 44 Fed.Reg. 23804. The two guidelines (in the form of questions and answers No. 21 and 22) challenged in this action are:

21. Q. Must an employer provide health insurance coverage for the medical expenses of pregnancy-related conditions of the spouses of male employees? Of the dependents of all employees?

A. Where an employer provides no coverage for dependents, the employer is not required to institute such coverage. However, if an employers' insurance program covers the medical expenses of spouses of female employees, then it must equally cover the medical expenses of spouses of male employees, including those arising from pregnancy-related conditions. But the insurance does not have to cover the pregnancy-related conditions of non-spouse dependents as long as it excludes the pregnancy-related conditions of such non-spouse dependents of male and female employees equally.

22. Q. Must an employer provide the same level of health insurance coverage for the pregnancy-related medical conditions of the spouses of male employees as it provides for its female employees?

A. No. It is not necessary to provide the same level of coverage for the pregnancy-related medical conditions of spouses of male employees as for female employees. However where the employer provides coverage for the medical conditions of the spouses of its employees, the level of coverage for pregnancy-related medical conditions of the spouses of male employees must be the same as the level of coverage for all other medical conditions of the spouses of female employees. For example, if the employer covers employees for 100 percent of reasonable and customary expenses sustained for a medical condition, but only covers dependent spouses for 50 percent of reasonable and customary expenses for their medical conditions, the pregnancy-related expenses of the male employees spouse must be covered at the 50 percent level.

The plaintiff in this action, Newport News Shipyard, maintains a medical plan which pays a major part of the cost of medical and hospital care caused by non-occupational illnesses or accidents of dependents of employees of the Shipyard. The maternity benefits under the plan, however, are limited to $500 of the hospital charges with additional allowances for hospital costs only if there are complications.[2] The defendant McNulty has filed a claim with the

---

2. The record does not indicate whether the Shipyard pays for the pregnancy-related disabilities of its female employees. However, there has been no challenge to the plan on that ground.

EEOC alleging that his wife did not receive the pregnancy-related benefits she is entitled to under the EEOC's interpretation of the Act.

The sole issue before this Court is whether, under the existing principles of Title VII, it is an unlawful employment act for an employer to provide disability coverage for dependents of employees but exclude from that coverage the pregnancy-related expenses of spouses of male employees. The Supreme Court in *Gilbert, supra,* and *Geduldig, supra,* state clearly that the exclusion of pregnancy-related benefits from a disability program does not constitute gender-based discrimination and that, absent a showing of gender-based effect, there can be no violation of Title VII § 703(a)(1). Although the PDA carved out a narrow exception with respect to female employees or applicants for employment, it clearly did "not change the application of Title VII to sex discrimination in any other way." S.Rep.No.331, 95th Cong., 1st Sess. July 6, 1977 p. 3. Thus, in situations not involving female employees or applicants for employment, the principles of Title VII as enunciated in *Gilbert, supra,* remain unchanged.

Guidelines established by the EEOC are, of course, entitled to consideration in determining legislative intent. *See General Electric Co. v. Gilbert,* 429 U.S. 125, 142, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). However, Congress, in enacting Title VII did not confer upon the EEOC the authority to promulgate rules or regulations pursuant to that Title. *Albemarle,* at 431, 95 S.Ct. at 2378 *supra.* Consequently, EEOC guidelines are interpretive guidelines and as such represent only an agency's interpretation of the law, *Association of American R.R. v. United States,* 603 F.2d 953, 962 (D.C.Cir. 1979) and "courts properly may accord less weight to such guidelines than to administrative regulations which Congress has declared shall have the force of law or to regulations which under the enabling statute may themselves supply the basis for imposition of liability." 429 U.S. at 142, 97

S.Ct. at 411 (citations omitted). In *Gilbert* the Supreme Court stated that the weight accorded to interpretive rulings such as the EEOC guidelines will "depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 429 U.S. at 142, 97 S.Ct. at 411 *citing Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

■ The EEOC guidelines in question do not fare well under these standards. The EEOC guidelines directly contradict the Title VII principles of sex discrimination as defined by the Supreme Court in *Gilbert* and which, with the exception of female employees and applicants for employment, remain in force unaltered by the PDA. Furthermore, the guidelines attempt to accomplish what Congress explicitly chose not to do. The guidelines in question attempt to extend the reaches of Title VII by requiring employers who provide disability plans for spouses of employees to include in those plans pregnancy-related expenses. The legislative history of the PDA states that the PDA does not deal with the question of dependents' benefits. Congress contemplated the precise issue dealt with in the EEOC guidelines, yet chose to leave that issue to be determined on the basis of the existing principles of Title VII. *See* Floor Debate on S. 995 Sept. 16, 1977 (pp. 15035–15060); S.Rep.No.331, 95th Cong., 1st Sess. July 6, 1977 p. 6. Congress was aware at that time of the Supreme Court's decision in *Gilbert* defining sex discrimination for the purposes of Title VII and acknowledged that the PDA did not alter the application of Title VII to sex discrimination in any other way. *Id.* at 3. The Court notes also that the EEOC has flatly contradicted itself in the past in enunciating its position on the proper interpretation of the sex discrimination provisions of Title VII and for this reason EEOC guidelines were given little deference by the Supreme Court in *Gilbert.* For these reasons, the Court declines to defer to the EEOC guidelines in determin-

ing whether under the existing principles of Title VII it is an unlawful employment act for an employer to provide disability coverage for dependents of employees but exclude from that coverage the pregnancy-related expenses of spouses of male employees.

### Conclusions

■ The Supreme Court in *Gilbert* held that the exclusion of pregnancy-related expenses from an employer's disability plan does not constitute gender-based discrimination and that, absent a showing of gender-based effect, there can be no violation of Title VII § 703(a)(1). The PDA altered this only with respect to female employees and applicants for employment, leaving intact the principles previously enunciated by the Supreme Court in *Gilbert.* Therefore, based on the existing principles of Title VII as set forth by the Supreme Court in *Gilbert* and set out in the Opinion of this Court, we HOLD that the disability plan of the plaintiff, which provides disability coverage for dependents of employees but limits that coverage with respect to pregnancy-related expenses of spouses of employees does not constitute gender-based discrimination. Furthermore, the Court notes that there has been no showing that the plan, by limiting its coverage of pregnancy-related expenses of spouses of male employees has caused any gender-based effect in violation of Title VII § 703(a)(1). Accordingly, the Court HOLDS that the plaintiff's disability plan does not violate Title VII, EEOC Guidelines No. 21 and 22 notwithstanding. The Court FINDS that an actual controversy exists within its jurisdiction from the admitted circulation of the questioned guidelines to the Shipyard's employees, the admitted espousal of the guidelines by the Union, and from the claim of McNulty. 28 U.S.C. § 2201. Therefore, the Court DECLARES that EEOC Guidelines No. 21 and 22 are contrary to law and are of no force and effect and that the defendant McNulty and his wife are not entitled to any benefits under the Act not presently provided to them by the plaintiff.

### Injunctive Relief

The Complaint filed by the plaintiff states in paragraph 1:

Plaintiff seeks a declaratory judgment and a permanent injunction against the Equal Employment Opportunity Commission's ... implementation and enforcement of ... Interpretive Guidelines concerning "The Pregnancy Discrimination Act," ... and against Defendants United Steel Workers of America ... which have filed charges with the EEOC seeking enforcement ... of the Final Interpretive Guidelines against Plaintiff.

In its prayer for relief at the end of the Complaint, the plaintiff requests that the Court permanently enjoin the EEOC from enforcing its Final Interpretive Guidelines and that the Court grant such additional relief as the Court may deem just and proper. The Court is of the opinion that the language of the Complaint is sufficiently broad to justify the Court's granting of injunctive relief and is sufficiently specific to apprise both defendants that the relief being sought is to enjoin them from representing to the Shipyard employees or their dependents that the law mandated that pregnancy benefits be extended to the spouses of employees.

The plaintiff's Complaint has requested injunctive relief against the EEOC and such relief is appropriate. Although it is the final judgment of this Court that Guidelines 21 and 22 are contrary to law and are of no force and effect, these guidelines are published in materials available to the public. Thus, although spouses of employees are not in fact entitled to pregnancy benefits as a matter of law, these published guidelines create the continuing expectation in the mind of the public that they are legally entitled to such benefits. As a result, employees and their families may be making budgetary and other decisions based on these erroneous expectations and Newport News Shipyard may be required to respond to countless unfounded suits by employees and their spouses seeking the pregnancy benefits they have been told

they are entitled to. Furthermore, by perpetuating the belief that these benefits are in fact available to spouses of employees, the EEOC, which is entrusted with the responsibility of educating the public in these matters and which is depended upon by the public for such information, would, in fact, be providing the public with false and misleading information and would be disregarding the finality and effect of this Court's judgment in the case.

The EEOC takes the position that if injunctive relief is granted it will interfere with the ability of the EEOC to advise fully persons coming to it for assistance, especially persons claiming to be aggrieved by personnel practices of the Shipyard. Specifically, the EEOC states that an injunction would create the impression that the EEOC cannot accept charges or discuss the merits of charges filed by individuals claiming that the failure to grant pregnancy benefits to spouses of employees is a discriminatory act. The EEOC also claims that an injunctive provision would interfere with the First Amendment rights of employees and other aggrieved persons seeking assistance from the EEOC.

A provision specifically enjoining the EEOC from representing to any employee of the Shipyard or dependent of any such employee that a dependent of an employee is entitled to pregnancy benefits *by operation of law* does not create the problems which the EEOC fears. Such an Order does not restrain the EEOC from accepting charges or discussing the merits of any claims for pregnancy benefits.

The EEOC also claims that an injunction would raise doubts as to the advice that EEOC employees can give regarding such allegations under the Equal Pay Act, 29 U.S.C. § 206(d). The EEOC has failed to point out how such doubts may come about and in what way advice given by the EEOC would be affected.

With respect to the request of the Shipyard that it be granted an injunction against the Union, the Court FINDS that, at this time, there is no indication that the Union will persist in representing to the public that dependents of employees of the Shipyard are entitled to pregnancy benefits as a matter of law. Accordingly, the Court DECLINES to issue an injunction against the Union. However, should it appear in the future that the Union is representing to the public that dependents of employees of the Shipyard are entitled to pregnancy benefits as a matter of law, the Court will entertain applications for injunctive relief against the Union at that time.

For the reasons stated in this Order, the EEOC and all of its agents and employees are ENJOINED and RESTRAINED from representing to any employee of the Shipyard or dependent of any such employee that a dependent of an employee is entitled to pregnancy benefits by operation of law.

It is so ORDERED.