**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff,**

v.

**JOSLYN MANUFACTURING AND SUPPLY COMPANY, Defendant.**

**No. 81 C 1541.**

United States District Court,
N. D. Illinois, E. D.

Oct. 26, 1981.

Stephen T. Myking, Charles C. Jackson, Michael A. Warner, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

Fernand L. Fortier, III, EEOC, Chicago, Ill., Leroy D. Clark and James N. Finney, EEOC, Washington, D.C., for plaintiff.

MEMORANDUM OPINION AND ORDER

PARSONS, Chief Judge.

Under its jurisdiction pursuant to 28 U.S.C. §§ 451, 1343 and 1345, this court has before it defendant's motion to dismiss or, in the alternative, its motion for summary judgment. In addition there is plaintiff's motion to strike defendant's affidavit in support of its alternative motions. For the reasons set out below, I grant plaintiff's motion to strike and grant defendant's motion for summary judgment.

Plaintiff is the Equal Employment Opportunity Commission ("EEOC") empowered to administer, interpret and enforce provisions of Title VII of the Civil Rights Act of 1964. Defendant is Joslyn Manufacturing and Supply Company, ("Josyln"), an Illinois corporation doing the business of manufacturing in this state.

EEOC alleges that Joslyn "has intentionally engaged in unlawful employment practices... in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e–2(a)." (EEOC Complaint, p. 2). This cause of action originated in a charge filed with the EEOC by John R. Smith, a former employee of Joslyn, on December 5, 1979. The gravamen of the charges is that Joslyn discriminates between its female and male employees with respect to pregnancy-related health benefits. EEOC charges discrimination in Joslyn's: 1) providing coverage for pregnancy-related expenditures to wives of employees for a certain period of time beyond the termination of male employees' employment while not providing such coverage for female employees themselves; 2) providing

lesser health insurance coverage for pregnancy-related expenses to wives of employees than the coverage for husbands of employees; 3) requiring a nine-month waiting period for wives of employees to be eligible for pregnancy-related health insurance coverage while not requiring any waiting period for health insurance coverage for husbands of employees; and 4) providing an extension of coverage of pregnancy-related medical expenses for wives of employees beyond the end date of insurance coverage while not providing extension of coverage of disabilities for husbands of employees beyond the end date of insurance coverage.

Joslyn's current insurance plan was adjusted to comply with the Pregnancy Discrimination Act ("PDA"), which in 1978 amended Title VII of the 1964 Civil Rights Act. The plan provides its female employees with benefits for pregnancy-related medical disabilities in order to equalize the benefits given to employees of both sexes for disabilities due to sickness.

The question presented is: When the employer has a health insurance plan that provides coverage of the husbands of employees, must the employer's coverage of the wives of employees include pregnancy-related expenses?

The determination of this issue turns on our examining the PDA. The act added subsection (k) to section 701 of the 1964 Civil Rights Act, 42 U.S.C. § 2000e(k). It reads:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2(h) of this title shall be interpreted to permit otherwise...

1. 29 C.F.R. § 1604 (1979)

The PDA was enacted in response to the Supreme Court decision in *General Electric Co. v. Gilbert*, 429 U.S. 125, 139, 97 S.Ct. 401, 410, 50 L.Ed.2d 343 (1976), that held: "pregnancy-related disabilities constitute an *additional* risk, unique to women, and the failure to compensate them for this risk does not destroy the presumed parity of the benefits, accruing to men and women alike, which results from the facially evenhanded *inclusion* of risks," thus, the exclusion of pregnancy disability benefits did not violate Title VII. 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). The amendment aimed to rectify the *Gilbert* case by explicitly declaring that sex discrimination in employment included the different treatment of women employees from men employees on the basis of the capacity of the former to become pregnant.

After the passage of the PDA, the EEOC revised its Guidelines on Sex Discrimination[1] and issued Questions and Answers interpreting the PDA. Questions and Answers[2] numbered 21 and 22 respectively state in the affirmative: "...if an employer's insurance program covers the medical expenses of spouses of female employees, then it must equally cover the medical expenses of spouses of male employees, including those arising from pregnancy-related conditions; [and] where the employer provides coverage for the medical conditions of the spouses of its employees, then the level of coverage for pregnancy-related medical conditions of the spouses of male employees must be the same as the level of coverage for all other medical conditions of the spouses of female employees."

Neither the language nor the legislative history of the PDA lends convincing support to the EEOC's interpretation of it. The language "employment-related purposes" and "similar in their ability or inability to work" has a commonsense reading that it pertains to women workers only. The EEOC would have us give an unrestrictive meaning that would apply to any

2. 44 Fed.Reg. 23804–08 (April 20, 1979), 20 C.F.R. § 104 (Appendix) (1980)

wife who could benefit from fringe benefit programs by being a dependent of a male worker. Since the language of this provision does not specifically state that the pregnancy-related discrimination is exclusive to working women, I must rely on the legislative history and concomitant interpretation of the PDA.

In support of its interpretation of the PDA, defendant cites the recent district court decisions, *Lockheed Missiles and Space Company v. EEOC*,[3] No. 81C1541 (N.D.Calif. July 6, 1981) and *Newport News Shipbuilding and Dry Dock Co. v. EEOC*, 510 F.Supp. 66 (E.D.Va.1981). *Newport* is directly on point for our determination. In that case, as in the present one, EEOC sought to enforce its guidelines, as set out in its Questions and Answers numbers 21 and 22 interpreting the PDA, against the plaintiff. Citing *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) and *Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), the judge in the *Newport* case found: "Clearly . . . the exclusions of pregnancy-related benefits from a disability program does not constitute gender-based discrimination and that, absent a showing of a gender-based effect, there can be no violation of Title VII § 703(a)(1). Although the PDA carved out a narrow exception with respect to female employees or applicants for employment, it clearly did not 'change the application of Title VII to sex discrimination in any other way.' S.Rep. No. 331 95th Cong., 1st Sess. July 6, 1977 p. 3. Thus, in situations not involving female employees or applicants for employment, the principles of Title VII as enunciated in *Gilbert, supra*, remain unchanged." *Newport News Shipbuilding and Dry Dock Co. v. EEOC*, 510 F.Supp. 66 at 70 (E.D.Va.1981).

My review of the legislative history corroborates the decisions in *Lockheed, supra*, and *Newport, supra*, holding that the intent of Congress was not to require the extension of pregnancy-related disability benefits

from female employees to wives of male employees. A few excerpts will suffice to demonstrate the intent of Congress to establish only a remedy for pregnancy-related disabilities of working women:

1) The bill would simply require that pregnant women be treated the same as other employees on the basis of their ability or inability to work. H.R. 95–948, 95th Cong., 2d Sess. 4, *reprinted in* [1978] U.S. Code Cong. & Ad. News 4749, 4752.

2) This bill would require that women disabled due to pregnancy, childbirth or other related medical conditions be provided the same benefits those provided other disabled workers. H.R.95–948, 95th Cong., 2d Sess. 5, *reprinted in* [1978] U.S. Code Cong. & Ad.News 4749, 4753.

3) It also makes clear that fringe benefit programs must treat women affected by those conditions [viz. pregnancy, childbirth or related medical conditions] equally to other employees on the basis of their ability or inability to work . . . H.R. 95–948, 95th Cong., 2d Sess. 13, *reprinted in* [1978] U.S. Code Cong. & Ad.News 4749, 4761.

4) Under this bill, the treatment of pregnant women in covered employment must focus not on their condition alone but on their ability to work. Pregnant women who are able to work must be permitted to work on the same condition as other employees; and when they are not able to work for medical reasons, they must be accorded the same rights, leave privileges and other benefits, as other workers who are disabled from working S.Rep. No. 95–331, 95th Cong., 1st Sess. 41 (1977).

The House and Senate Reports on the PDA indicate that Congress did not intend for this legislation to be a catchall provision to provide benefits to all women including wives of working men. I cannot agree with EEOC's characterization of the statements

---

**3.** *Lockheed* adopts the reasoning of *Newport in toto; Newport* is currently up on appeal in the 4th Circuit.

of Senators Bayh and Cranston and of Congressmen Sarasin and Weiss as evidence of the applicability of the legislation to pregnant wives of male employees. The remarks of these legislators were either aspirational, personal opinion or for clarification. The relevant remarks on the floor were made by Senator Williams who introduced the Senate version of the bill. He made it clear to Senator Hatch in the Senate Debates that the act unequivocally limits pregnancy-related discriminatory treatment to employees and not to their dependents. See Generally S.Rep. No. 331 95th Cong., 1st Sess. 6 (1977). Other legislators did so as well. Their remarks substantiate the reading of congressional intent put forward by defendant.

I agree with defendant's interpretation of the PDA and find the two above district court decisions persuasive. For this court to interpret the PDA as applying to wives of male employees would stretch the language impermissibly beyond its plain meaning thus distorting the intent of Congress. This court cannot expand the limited purpose for which Congress enacted the law. After examining the pleadings, affidavits, and other evidence, I find no genuine material fact in issue that would prevent me from ruling as a matter of law, for defendant.

EEOC's motion to strike defendant's supporting affidavit is granted. This affidavit by Lewis Jacobson, Manager of the corporate personnel department of the defendant, is argumentative, conclusory and, in certain parts, made without a showing of personal knowledge. Under Fed.R.Civ.P. 56(e), defendant's affidavit is required to "set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus defendant's affidavit is legally insufficient under the rule.

The striking of the affidavit would not alter my granting defendant summary judgment since the facts and legal issues are clear and since Fed.R.Civ.P. 56(b) does not require supporting affidavits for defendant's motion for summary judgment.

It is so ordered.