**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**GROUP HOSPITAL SERVICE, INC. d/b/a Blue Cross-Blue Shield of Texas, Defendant.**

Civ. A. No. 3–81–0421–H.

United States District Court, N. D. Texas, Dallas Division.

April 12, 1982.

On Motion to Reconsider May 14, 1982.

Jessica R. Alexander, E.E.O.C., Dallas, Tex., for plaintiff.

John F. McCarthy, Jr., Seay Gwinn Crawford Mebus & Blakeney, Dallas, Tex., for defendant.

## ORDER

SANDERS, District Judge.

This case is before the Court on Defendant's Motion for Summary Judgment, filed August 24, 1981; Plaintiff's Response thereto, filed September 16, 1981; and the Supplemental Briefs of counsel, filed October 9, 1981. On March 18, 1982, the Court heard oral argument on the pending motion. Having considered the motions, briefs, and arguments of counsel, the Court is of the opinion that Defendant's motion should be, and it is hereby, DENIED.

On October 31, 1978, Congress passed the Pregnancy Discrimination Act ("the Act"), P.L. 95–555, which amended Section 701 of Title VII (42 U.S.C. § 2000e(k)) to prohibit discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." The Act specifically provided that "women affected by pregnancy, child-

birth, or related medical conditions shall be treated the same for all employment related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). Section 2(b) gave employers 180 days, or until April 29, 1979, to implement required changes in existing fringe benefit programs.

On April 27, 1979, the Defendant circulated a memorandum to its employees summarizing the substance of the Act and explaining its impact on existing insurance and fringe benefit programs. On page two of the memorandum the company explained who was eligible to receive benefits under the Act: "To be covered for disability benefits, the employee must be actively at work on Monday, April 30, 1979. Employees on any type of leave of absence on April 29, 1979, will not be eligible to receive these benefits until they return to work and their coverage becomes effective again." The Defendant contends that it was entitled to compensate its employees in accordance with its "active at work" policy. The EEOC contends that Defendant was obligated to begin paying pregnancy disability benefits to eligible employees on April 29 regardless of whether those employees were active at work on that date.[1]

As both parties acknowledge, there is little, if anything, in the legislative history or case law to suggest how to resolve the issue presented by this case. Although the legislative history of the Act is rather lengthy, most of the debate about the Act involved portions of the statute that are not at issue here.[2] To the extent that the debate focused on the implementation provision of the Act (Section 2(b)), discussion was limited to issues not before this Court.[3] Similarly, none of the cases cited by counsel discuss the proper construction of Section 2(b).

Given the paucity of authority on this issue, the Court is governed by the following principles:

1. The Court should give some deference to an agency's interpretation of the laws that it is responsible for enforcing. *Griggs v. Duke Power Company*, 401 U.S. 424, 434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971). The Court is not bound by the agency's interpretation, however; the proper weight to be accorded it depends on the thoroughness of the agency's consideration, "the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Electric Co. v. Gilbert*, 429 U.S. 125, 142, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976), *quoting Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

Shortly after the Pregnancy Discrimination Act was passed, the EEOC amended its

---

1. The EEOC also contends that the Defendant did not have an active at work policy prior to the passage of the Act and developed that policy solely for the purpose of circumventing the Act. The Court is of the opinion, however, that while the company's motive may be of some relevance to the EEOC in deciding which cases to prosecute, it has no bearing on the legal issues in this case. Regardless of the company's motive, the validity of such a policy depends on whether it comports with the Act. To the extent that the EEOC continues to contend otherwise its contention is hereby rejected.

2. Most of the debate focused on an anti-abortion rider which was added to the original version of the bill. H.R.Rep.No.95–948, 95th Cong., 2d Sess. (1978), *reprinted in* [1978] U.S. Code Cong. & Adm.News 4749, 4761.

3. There was apparently some debate about how long a transition period was necessary to allow employers to comply with the Act. The legislative history contains this explanation of how 180 days was chosen:

> It is the committee's intention to provide for an orderly and equitable transition, with the least disruption for employers and employees, consistent with the purposes of the bill. Since the bill is merely reestablishing the law as it was understood prior to *Gilbert* by the EEOC and by the lower courts and as it now exists in many States, a protracted delay in implementation would not be appropriate. Six months was selected as that period which would be more than adequate to permit orderly implementation of new coverage and which would also recognize the pressing need to make nondiscriminatory coverage mandatory as soon as practicable.

> *Id.* at 4756.

Guidelines on Discrimination Because of Sex and promulgated Questions and Answers to the Act. 29 C.F.R. § 1604 (1979). Question and Answer 3 summarizes the Commission's position on the issue here:

3. Q. Must an employer provide benefits for pregnancy-related conditions to an employee whose pregnancy begins prior to April 29, 1979, and continues beyond that date?

A. As of April 29, 1979, the effective date of the Act's requirements, an employer must provide the same benefits for pregnancy-related conditions as it provides for other conditions, regardless of when the pregnancy began. Thus, disability benefits must be paid for all absences on or after April 29, 1979, resulting from pregnancy-related temporary disabilities to the same extent as they are paid for absences resulting from other temporary disabilities.

■ The Defendant denies that the EEOC's Question and Answer should be given any authoritative weight, citing *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 510 F.Supp. 66 (E.D.Va.1980), 667 F.2d 448, *rev'd* 27 FEP Cases 1219 (4th Cir. 1982).

In *Newport News*, the Court discussed the validity of the EEOC's Guidelines on Sex Discrimination and specifically rejected the Commission's interpretation of a provision of the Pregnancy Discrimination Act. After the briefs were submitted in this case, however, the Fourth Circuit reversed the lower court's decision, holding that the EEOC's interpretation had been correct. 667 F.2d 448, 27 FEP Cases 1219. In light of that holding, the EEOC reurges this Court to adopt the Commission's position regarding the proper construction of Section 2(b).

Although the Fourth Circuit in *Newport Shipbuilding* did adopt the EEOC's interpretation, the Court did so only after having determined that that interpretation was consistent with its own understanding of the Act. Similarly here, it would be inappropriate for the Court to simply adopt the Commission's findings without questioning the rationale behind them. Because the Questions and Answers themselves contain no discussion of that rationale, they have very limited persuasive value. *See General Electric Co. v. Gilbert*, 429 U.S. at 142, 97 S.Ct. at 411.

■ 2. Remedial statutes, such as Title VII of the Civil Rights Act of 1964, should be liberally construed "giving due regard to the plain meaning of the statutory language and the intent of Congress." *A. H. Phillips Co. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807–808, 89 L.Ed. 1095 (1945); *see also Tcherepin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967); *EEOC v. Louisville & Nashville Railroad Co.*, 505 F.2d 610, 616 (5th Cir. 1974), *cert. denied*, 423 U.S. 824, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975).

■ A plain reading of Section 2(b) of the Act suggests that on April 29, 1979, employers with comprehensive fringe benefit programs were obligated to begin compensating female employees with pregnancy disabilities regardless of whether they had taken maternity leave prior to that date. Such a reading is consistent with the purpose of the Act, which was to ensure that men and women would receive comparable disability coverage. [1978] U.S.Code Cong. & Ad.News 4750. Under the Defendant's fringe benefit program in effect at the time, men who had incurred disabilities prior to April 29 and who were thus "similar [to pregnant women] in their ... inability to work" were eligible to receive disability benefits on that date. To deny coverage to women who were on maternity leave April 29 would be to treat women with pregnancy disabilities differently than men similarly situated.[4]

---

4. The Defendant contends that its active at work policy is nondiscriminatory because it applies equally to all employees. While that contention may be true generally, it ignores the fact that in this particular case only female employees would be affected by the policy. The practical effect of accepting Defendant's interpretation of the Act would be to require

3. The EEOC's application of the Act does not have a retroactive effect. Although the EEOC denies that eligibility under the Act should be conditioned on being active at work April 29, it does not contend that employees should be compensated for days missed or expenses incurred prior to that date. Thus, although a female employee who took maternity leave on April 28, 1979, would be eligible to receive disability benefits under the EEOC's reading of the Act, her benefits would not begin accruing until April 29. In light of that fact, the Court is of the opinion that the Act is not retroactive and *Scammel v. City of Dallas*, 565 F.2d 955 (5th Cir. 1978) and *Vuyanich v. Republic National Bank of Dallas*, 505 F.Supp. 224, 24 FEP Cases 128 (N.D.Tex. 1980), cited by Defendant, are inapposite.

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED.

Because the EEOC has not filed a motion for summary judgment, the Court is unable to dispose of this case at this time. The Court is of the opinion, however, that this case should be resolved in light of the principles discussed above, and therefore, will consider a motion for summary judgment if promptly filed and properly before it.

SO ORDERED.

### On Motion to Reconsider

On April 12, 1982, this Court entered an Order denying Defendant's Motion for Summary Judgment and suggesting that it would enter Judgment in favor of Plaintiff upon proper motion. In response to that Order, Defendant filed a Motion for Reconsideration on April 15, 1982, and Plaintiff filed a Motion for Summary Judgment on April 19, 1982. On May 7, 1982, the Court heard argument on those motions and announced its rulings from the bench. This Opinion is intended to supplement the findings and conclusions announced from the bench and discussed in the April 12, 1982, Order.

In urging this Court to reconsider its previous ruling and to deny Plaintiff's Motion for Summary Judgment, Defendant raises several points that need to be addressed.

First, Defendant contends that the Court erred in giving too much weight to the EEOC's position as set forth in the Questions and Answers published at 29 C.F.R. § 1604. For the following reasons, Defendant's contention is without merit. Although the Court is obligated under *Griggs v. Duke Power Company*, 401 U.S. 424, 434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971) to consider the EEOC's interpretation of the Act, the degree of deference to give it depends on the factors enunciated in *Electric Co. v. Gilbert*, 429 U.S. 125, 142, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976), *quoting from Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). Because there was no discussion of the rationale behind the EEOC's interpretation, the Court attached very little weight to the Commission's conclusions. Instead, the Court reviewed the legislative history and language of the Act and reached its own independent conclusion about how to interpret it. To be perfectly clear, that independent analysis, rather than the EEOC's conclusions, formed the basis of the Court's opinion.

Second, the Defendant contends that the Court erred in focusing on the end result or impact of the Defendant's "active at work" policy rather than the alleged fairness of that means of implementing the Act. In support of this contention, Defendant urges the Court to consider its argument that the company's policy was non-discriminatory because it simply required women to meet the same eligibility requirements (*i.e.*, being active at work) as men would be required to meet in order to receive benefits under an "upgrade" in the company's fringe benefit program. The Court has previously considered and rejected this argument, and simply reiterates its

---

women to satisfy a condition that men did not have to meet in order to receive similar benefits. The Court is of the opinion that such a

result would be clearly contrary to the purposes of the Act.

**190**

position here. Section 1 of the Act, 42 U.S.C. § 2000e(k), provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." The plainest reading of the Act, and the reading which this Court adopts, requires employers to begin compensating women for pregnancy-related disabilities on April 29, 1979, if they were already compensating men for "similar" disabilities. It does not require employers to institute new policies or "upgrade" existing policies to provide new benefits for men; the purpose of the Act was simply to put men and women on an equal par. *See* H.R.Rep.No.95–948, 95th Cong., 2d Sess. (1978), *reprinted in* [1978] U.S.Code Cong. & Adm.News 4752. Rather than compare women with pregnancy-related disabilities to men who suffered disabilities covered under a hypothetical "upgrade" in a fringe benefit program, therefore, it is more appropriate to consider Defendant's policy in effect on April 29, 1979, and the type of benefits men were receiving thereunder. On that date, male employees who had previously incurred "similar" disabilities were eligible to receive benefits under the company's fringe benefit program; consequently, women who had previously incurred pregnancy-related disabilities should have been eligible to receive benefits.

Finally, the Defendant contends that the Court has failed to consider the practical implications of its ruling in light of the legislative intent. Specifically, the Defendant argues that Congress did not intend to require employers to compensate what Defendant characterizes as a new category of employees: those who were not active at work on April 29, 1979. The Court is unpersuaded by this argument. For the reasons previously stated, the Court is of the opinion that its interpretation of the Act is consistent with Congress' intent to ensure that men and women receive equal benefits under company policies. In addition, it seems fair to assume that if Congress had

intended to create an exception for women who were not active at work on April 29, 1979, it would have expressly so provided. Absent any indication that Congress intended such a result, the Court is of the opinion that a broader reading of the Act is more correct.

For the foregoing reasons, in addition to the reasons previously stated from the bench and in this Court's April 12, 1982, Order, Defendant's Motion to Reconsider is DENIED and Plaintiff's Motion for Summary Judgment is GRANTED. Plaintiff shall submit a proposed Judgment in accordance with this Opinion.

SO ORDERED.