**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,**

v.

**LOCKHEED MISSILES & SPACE COMPANY, INC., Defendant-Appellee.**

No. 81–4542.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1982.

Decided July 6, 1982.

Rehearing and Rehearing En Banc Denied Sept. 27, 1982.

Philip Sklover, Washington, D. C., argued for plaintiff-appellant; Susan B. Reilly, EEOC, Washington, D. C., on brief.

B. Scott Silverman, San Francisco, Cal., argued for defendant-appellee; Morrison & Foerster, San Francisco, Cal., Ralph A. Hurvitz, Lockheed Missiles & Space Co., Sunnyvale, Cal., on brief.

Before BROWNING, MERRILL and WRIGHT, Circuit Judges.

MERRILL, Circuit Judge:

Appellant Equal Employment Opportunity Commission (EEOC) has charged Appellee Lockheed Missiles & Space Company, Inc., with a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act of 1978 (PDA), Pub.L.No. 95–555, 92 Stat. 2076 (codified at 42 U.S.C. § 2000e(k)). EEOC appeals from summary judgment in favor of Lockheed. The question presented is whether PDA, which concededly applies to women employees, applies as well to spouses of male employees. The district court held that it did not.[1] We agree.

Section 703(a) of Title VII, 42 U.S.C. § 2000e–2(a) provides:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

In *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), the Supreme Court held that pregnancy-related classifications did not on their face constitute discrimination on the basis of sex in violation of Title VII. Specifically the Court held that it was not an unlawful employment practice for an employer to provide to its employees a disability insurance program which excluded from its coverage all pregnancy-related disabilities. In so holding, the Court applied principles earlier announced in *Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974). There it was held that a California state statutory program for disability benefits which contained such an exclusion did not violate the Equal Protection Clause of the Fourteenth Amendment.

---

1. The district court relied on *Newport News Shipbuilding and Dry Dock Co. v. EEOC*, 510 F.Supp. 66 (E.D.Va.1981), which has since been reversed by the Court of Appeals for the Fourth Circuit, 667 F.2d 448 (4th Cir. 1982), and has now been taken for rehearing by the Court of Appeals En Banc (order of April 12, 1982).

PDA was passed in response to the *Gilbert* decision. It provided in relevant part:

> The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work * * *.

42 U.S.C. § 2000e(k).

Lockheed offered to its employees at no cost a medical benefit plan which, except for pregnancy, covered the medical expenses of the dependents of its employees. EEOC asserts that the effect of the pregnancy exclusion was to discriminate against male employees in violation of § 703(a). It reasons that a plan which denies full coverage for female spouses only because of their sex, denies employment benefits to male employees because of their sex. It argues that by PDA Congress intended to and has completely overruled *Gilbert* and has established that discrimination on the basis of pregnancy, wherever found, is gender-based discrimination. PDA cannot be read so broadly.

■ The quoted portion of § 2000e(k) can be divided into two clauses separated by the semicolon. The first is simply definitional: The word "sex" as used in § 703(a) is to be read to mean "pregnancy, childbirth or related medical conditions." Reading PDA against § 703(a)(1) the latter now provides that it shall be an unlawful employment practice for an employer to "discriminate against any individual with respect to his compensation * * * because of *such individual's* * * * pregnancy, childbirth or related medical conditions." (Emphasis supplied.) The amendment would have the same effect on § 703(a)(2). This can hardly be read to apply to male employees. By choosing the definitional form of amendment, Congress has expressly limited the scope of its action to women employees.

The second clause in its reference to women employees ("employment-related purposes"; "other persons not so affected but similar in their ability or inability to work") clarifies the Congressional intent by restating the substance of the first clause in other than definitional terms, and making it clear that its limitation to employees was not inadvertent.

The legislative history of PDA provides further support for this construction of its terms. While it does contain some contradictory expressions on the part of some members of Congress as to what they believed the legislation did or should provide in the way of dependents' benefits,[2] the

---

2. *E.g.*, Senator Bayh, one of the sponsors of the Senate bill that became PDA, at one point spoke to the question of dependents' benefits; not, however, as an expression of the bill's coverage, but as an opinion on the state of court-made law on the subject of sexual discrimination. (This lends support to our conclusion that PDA does not deal with this question and accordingly that it must be resolved under pre-PDA law.) He stated:

> There remains the question, however, of whether dependents of male employees must receive full maternity coverage if the spouses of female employees are provided complete medical coverage. While it is difficult to second-guess the courts, I feel that the history of sex discrimination cases under the 14th amendment in addition to previous interpretations of the Title VII regulations relating to the treatment of dependents will require that if companies choose to provide full coverage to the dependents of their female employees,

then they must provide such complete coverage to the dependents of their male employees.

123 Cong.Rec. 29,642 (1977).

Senator Cranston, a cosponsor of the legislation, also spoke to the same question. He expressed his personal opinion that Title VII's sexual discrimination ban extends to spouses of male employees, but acknowledged that the Senate Committee had not taken a position on the question. He stated:

> When the Human Resources Committee considered how S. 995 would affect medical coverage for dependents of employees, the question was raised about the obligation of an employer to pay for the pregnancy-related medical expenses of spouses of employees. The committee presumed that most comprehensive medical plans do cover dependents, and that it was unlikely that any comprehensive plan covering spouses would cover hus-

Senate Committee Report leaves no room for doubt. There it is stated:

> Questions were raised in the committee's deliberations regarding how this bill would affect medical coverage for dependents of employees, as opposed to employees themselves. In this context it must be remembered that the basic purpose of this bill is to protect women employees, it does not alter the basic principles of title VII law as regards sex discrimination. Rather, this legislation clarifies the definition of sex discrimination for title VII purposes. Therefore the question in regard to dependents' benefits would be determined on the basis of existing title VII principles.

S.Rep.No.331, 95th Cong., 1st Sess. 5–6 (1977).

It is thus clear that in enacting PDA, Congress had in mind the fact that a question was presented as to dependents' benefits and deliberately chose not to deal with it. The Senate Report explicitly states that the basic purpose of the legislation was to protect women employees; that Congress did not regard the bill as altering the basic principles of Title VII respecting sexual discrimination and intended that those unaltered basic principles would apply in determining dependents' benefits. In the eyes of Congress then, PDA did no more than provide that an exception to Title VII's basic principles was to apply in the case of women employees.[3]

As we read *Gilbert* and *Geduldig*, the "basic principle" announced there was that for discrimination to be gender-based the line between the favored and disfavored groups must be drawn strictly on lines of gender: male versus female. In applying this basic principle to the exclusion of pregnancy from a disabilities benefits plan, *Gilbert* approvingly read *Geduldig* as holding that such an exclusion "is not a gender-based discrimination at all." 429 U.S. at 136, 97 S.Ct. at 408. With respect to what constitutes gender-based discrimination, *Gilbert* quotes *Geduldig* extensively:

> "California does not discriminate with respect to the persons or groups which are eligible for disability insurance protection under the program. The classification challenged in this case relates to the asserted underinclusiveness of the set

---

bands of women employees but not wives of male employees. Thus, the committee did not directly answer the question of whether such plans would be discriminatory under title VII.

Mr. President, I would like to express for the record my own view that such a plan would indeed be discriminatory, and would be prohibited by the title VII sex discrimination ban.

123 Cong.Rec. 29,663 (1977).

In the House, Mr. Sarasin, a supporter of the House bill expressed the view that the bill would extend to wives of male employees. He stated, "I don't think that this is the intent, but I don't see how you can read it any other way." *Legislation to Prohibit Sex Discrimination on the Basis of Pregnancy: Hearings on H.R. 5055 and H.R. 6075 Before the Subcomm. on Employment Opportunities of the House Comm. on Education and Labor* (Part 1), 95th Cong., 1st Sess. 188 (1977).

**3.** While EEOC's position finds support in the Commission's Final Interpretive Guidelines on Sex Discrimination published at 44 Fed.Reg. 23804 *et seq.* (1979) (29 C.F.R. § 1604.10 and appendix (1981)), the language of the introduction to the Guidelines echoes the Senate Report and undercuts the substance of the text of the Guidelines. In response to its illustrative Question 21 the Commission in its Guidelines stated that "if an employer's insurance program covers the medical expenses of spouses of female employees, then it must equally cover the medical expenses of spouses of male employees, including those arising from pregnancy-related conditions." Normally interpretations of a statute by the administrative agency charged with its enforcement are entitled to considerable deference by the courts. *See, e.g., Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971). However the introduction to the Guidelines states:

> To the extent that a specific question is not directly answered by a reading of the Pregnancy Discrimination Act, existing principles of Title VII must be applied to resolve that question. The legislative history of the Pregnancy Discrimination Act states explicitly that existing principles of Title VII law would have to be applied to resolve this question of benefits for dependents.

44 Fed.Reg. 23804 (1979). Thus it is clear that EEOC's answer to its Question 21 is not based on a contemporaneous interpretation of PDA but rather on its erroneous view of pre-existing Title VII principles.

of risks that the State has selected to insure." 417 U.S. at 494, 94 S.Ct. at 2491. Quoted at 429 U.S. p. 134, 97 S.Ct. p. 407.

\* \* \* \* \* \*

"The lack of identity between the excluded disability and gender as such \* \* becomes clear upon the most cursory analysis. The program divides potential recipients into two groups—pregnant women and nonpregnant persons. While the first group is exclusively female, the second includes members of both sexes." 417 U.S. at 496–497 n.20, 94 S.Ct. at 2492 n.20. Quoted at 429 U.S. p. 135, 97 S.Ct. p. 407.

\* \* \* \* \* \*

"There is no risk from which men are protected and women are not. Likewise, there is no risk from which women are protected and men are not." 417 U.S. at 496–497, 94 S.Ct. at 2492. Quoted at 429 U.S. p. 135, 97 S.Ct. p. 408.

▋ We conclude that under basic principles of Title VII, as they existed prior to PDA, exclusion of pregnancy-related medical expenses of spouses of male employees was not gender-based discrimination in violation of § 703(a) of Title VII. We further conclude that PDA did not change those principles.

JUDGMENT AFFIRMED.

EUGENE A. WRIGHT, Circuit Judge, specially concurring.

I concur in the result but write separately because I believe that neither the PDA nor *Gilbert* answers the question posed here.

The majority concludes correctly that Congress adopted the PDA to clarify that female employees and job applicants could not be discriminated against on the basis of pregnancies or ability to become pregnant. The PDA reversed the decision in *Gilbert* that employers could discriminate against females with regard to opportunities on the basis of pregnancy.

That the PDA refers only to employees or applicants is intuitive because the purpose of Title VII, obviously, is to provide equal employment opportunities. That the PDA

does not answer the question here is clear from the legislative history quoted by the majority at page four. We are not concerned with employment opportunities of female spouses.

What we must decide is whether Lockheed denies its male employees a health benefit plan equivalent to that given its female employees and, if so, whether the denial is based on impermissible sex discrimination. For our purposes, it is irrelevant that dependents' pregnancies are the excluded risk. The exclusion could be breast cancer. Our focus is properly on the effect of the exclusion on the employee because it is his compensation and terms of employment Title VII protects from unlawful discrimination. *See Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 708, 98 S.Ct. 1370, 1375, 55 L.Ed.2d 657 (1978).

Lockheed's plan insures employees against some risks associated with the health of their *dependents*, who are spouses, children under 19, and those over 19 under limited circumstances. Dependents' pregnancies are excluded from the list of risks covered.

This exclusion affects both male and female employees. While a male employee bears the cost of his spouse's pregnancy, a female employee bears the cost of her daughter's pregnancy. The coverage of risks for the two groups (females with dependents and males with dependents) is equivalent. The value of the coverage and the cost of the pregnancy exclusion may vary among individual employees, but this is a necessary incident to group health insurance, as the Court noted in *Manhart*. *Id.* at 710, 98 S.Ct. at 1376.

The exclusion is facially neutral and nothing before us indicates that it has an adverse impact on Lockheed's male employees. Even if some adverse impact were shown, the Court stated in *Manhart* that "a completely neutral practice will inevitably have some disproportionate impact on one group or another. *Griggs* does not imply, and this Court has never held, that discrimi-

nation must always be inferred from such consequences." *Id.* at 711, n.20, 98 S.Ct. at 1377 n.20.

We need not decide whether denying pregnancy coverage to *spouses,* rather than to *dependents,* discriminates against male employees. The exclusion here applies to and affects both male and female employees. I see no unequal treatment or discrimination in the plan as provided.