539 F.Supp. 153 (1982)
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, International Union of Electrical, Radio and Machine Workers, AFL-CIO-CLC and IUE Local 1102, Plaintiffs,
v.
EMERSON ELECTRIC COMPANY, Defendant.
No. 81-862C(3).
United States District Court, E. D. Missouri, E. D.
March 31, 1982.
*154 Barbara A. Seely, EEOC, St. Louis, Mo., Carole W. Wilson, Washington, D. C., Gurenberg, Souders & Levine, St. Louis, Mo., for plaintiffs.
Eugene T. D'Ablemont, John F. Gibbons, Kelley, Drye & Warren, New York City, R. H. McRoberts, Sr., Thomas C. Walsh, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
FILIPPINE, District Judge.
This matter is before the Court on cross-motions for summary judgment. Both sides have filed memoranda and affidavits in support of their motions.
The facts in this matter are not in dispute. Defendant is a major industrial concern with a facility at 8100 West Florissant Avenue, within the Eastern District of Missouri. Defendant offers various health insurance plans to its employees, the availability of the plans depending on employee classification. The plans cover the medical expenses of spouses of employees, but place a limitation on coverage of pregnancy-related hospital and medical expenses of spouses that does not exist with respect to other medical expenses incurred by spouses. Plaintiffs brought this action alleging that the plans of defendant violate 42 U.S.C. § 2000e-2(a) in that they discriminate against male employees, on the basis of sex, *155 with respect to their compensation. Because there are no facts in dispute and because only questions of law remain to be resolved, summary judgment is appropriate in this matter.
Defendant first moves for dismissal/summary judgment with respect to plaintiff International Union of Electrical, Radio, and Machine Workers (International Union) and plaintiff IUE Local 1102 (Local Union) on the basis that neither has satisfied the jurisdictional prerequisites of Title VII. Specifically, defendant maintains that the International Union did not file a timely charge with the EEOC and is thus precluded from bringing this action. As to the Local Union, defendant contends that although it filed a timely charge, its role in this action is limited to that of an intervenor.
At the outset, the Court rejects defendant's contention that the Local Union's role in this action must be limited to that of an intervenor. It is beyond question that a labor union is considered a "person aggrieved" under 42 U.S.C. § 2000e-5(a), (e), and that a labor union is a proper plaintiff in a Title VII action. International Woodworkers of America v. Georgia-Pacific Corp., 568 F.2d 64, 66-67 (8th Cir. 1977).[1]
As to the International Union, the Court likewise is not persuaded by defendant's argument that the International Union must be dismissed because it did not file a timely EEOC charge. The undisputed facts in the record indicate that timely charges with regard to the subject matter of this action were filed by several plaintiffs other than the International Union. The law in this circuit is that identical claims may be brought even if all the plaintiffs have not filed timely charges with the EEOC. Allen v. Amalgamated Transit Union, 554 F.2d 876, 882-83 (8th Cir. 1977). In Allen the court expressed its view that it would be nonsensical to require all parties with identical claims to file EEOC charges when the purpose of the charge requirementnotice to the employerhad already been served. The Eighth Circuit's reasoning in Allen is bolstered by the Supreme Court's recent announcement that the filing of a timely EEOC charge is not a jurisdictional prerequisite but rather is a requirement that, like a statute of limitations, is subject to equitable tolling, waiver, and estoppel. Zipes v. Trans World Airlines, ___ U.S. ___, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Therefore, the Court will deny defendant's motion for dismissal of the International Union.
Both sides have moved for summary judgment on the issue of liability. The central issue brought to focus by the cross-motions is the applicability of the Pregnancy Discrimination Act (PDA), Pub.L.No.95-555, amending 42 U.S.C. § 2000e(k).[2] Defendant contends that the PDA is inapplicable in this matter, while plaintiffs argue that the statute does govern, and that according to its provisions, defendant's health plans discriminate on the basis of sex.
The Court, in its analysis of this issue recognizes that several courts have addressed the exact issue presented here does the PDA apply to employer-sponsored health plans and their application to employees' dependents. In all four district court cases of which the Court is aware, it was held that Congress had not intended *156 the coverage of the PDA to extend to employees' dependents. EEOC v. Joslyn Mfg. & Supply Co., 524 F.Supp. 1141 (N.D.Ill. 1981); EEOC v. Lockheed Missiles and Space Co., No. C-80-3833 WWS (N.D.Cal. July 6, 1981); Newport News Shipbuilding & DryDock Co. v. EEOC, 510 F.Supp. 66 (E.D.Va.1981); EEOC v. Newport News Shipbuilding & DryDock Co., No. 80-237-NN (E.D.Va. February 4, 1981). Three of the decisions relied on the published Newport News opinion. 510 F.Supp. 66. However, both Newport News decisions were consolidated for appeal, and in a recent Fourth Circuit opinion, were reversed. Newport News Shipbuilding & DryDock Co. v. EEOC, 667 F.2d 448 (4th Cir. 1982). The court of appeals' decision rests primarily upon a textual analysis of the statute with some references to the legislative history of the PDA. Id. at 450-51. Because of the unsettled status of this issue before the courts that have considered it, the Court feels it necessary to undertake its own analysis of the statute.
Inquiry into the applicability of the PDA to the facts of this case must begin with an examination of the language of the statute itself. The Court does not believe the language of the statute to be so clear as to negate the necessity of examining its legislative history to discern the intent of Congress. The critical clause, "and women affected by pregnancy ... shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work," can be construed in plaintiffs' favor or for defendant. The phrase "women affected by pregnancy" is certainly very broad and, on its face, would seem to include spouses of male employees. However, the phrase "shall be treated the same ... as other persons not so affected but similar in their ability or inability to work," seems to confine the comparison required by the statute to employees. In fact, the dissenting judge in the Newport News appellate decision adopted this latter approach. 667 F.2d at 451-52 (Hall, J., dissenting). Thus, because of the ambiguity of the language of the statute, the Court must examine its legislative history to determine Congress' intent.
The Court notes first that the legislative history of the PDA is replete with references to "pregnant workers," "working mothers," "working women," and other like terms. See, e.g., Legislative History of the Pregnancy Discrimination Act of 1978, Prepared for the Senate Comm. on Labor and Human Resources (U.S.Gov't Prtg. Office 1979) at 3, 7, 12, 19, 24-25, 67, 150 [hereinafter cited as Legislative History]. Although these references were not addressed to the particular issue now before the Court, they do indicate that Congress was thinking very much in terms of pregnant employees and ensuring that all employees received equal benefits. It is clear that Congress was most concerned with overturning the specific result in General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), in which the Court held that income maintenance plans that exclude or limit benefits for pregnancy disabilities are not discriminatory under Title VII.
However, there are references in the legislative history of the PDA to the specific issue before this Court. These discussions are of unquestioned relevance in the determination of congressional intent on the matter. In the Senate Committee Report on the bill that ultimately was enacted as the PDA, it is stated that "the basic purpose of this bill is to protect women employees. ..." With respect to health plans that limited coverage for dependents' pregnancy-related expenses the Report states that the question remains open under the bill. Legislative History at 42-43. The Committee Report is entitled to great weight as it voices the opinion of the entire Committee on Human Resources rather than the view of an individual Member. Further, during floor debate in the Senate the following exchange took place between Senator Hatch and Senator Williams, one of the primary sponsors of the bill:
[Mr. Hatch] Let me go a little bit further. The phrase "women affected by *157 pregnancy, childbirth or related medical conditions," appearing on page 2, lines 1 and 2, appears to be overly broad, and is not limited in terms of employment. It does not even require that the person so affected be pregnant.
Indeed, under the present language of the bill, it is arguable that spouses of male employees are covered by this civil rights amendment. One might even argue that other female dependents are covered. And what about the status of a woman co-worker who is not pregnant but rides with a pregnant woman and cannot get to work once the pregnant female commences her maternity leave or the employed mother who stays home to nurse her pregnant daughter? Are they women "affected by" pregnancy?
Could the sponsors clarify exactly whom that phrase intends to cover?
MR. WILLIAMS. With regard to more maintenance plans for pregnancy-related disabilities, I do not see how this language could be misunderstood.
MR. HATCH. Because it is very broadly drafted and if we say "affected by" it, that includes all of those illustrations that I have just enumerated. If it does not, I want to be sure that everybody knows from the record that it only refers to the woman employee who is pregnant or who becomes pregnant after her employment.
MR. WILLIAMS. If there is any ambiguity, with regard to income maintenance plans, I cannot see it. "... shall be treated the same for all employment-related purposes." I do not see how one can read into this any pregnancy other than that pregnancy that relates to the employee, and if there is any ambiguity, let it be clear here and now that this is very precise. It deals with a woman, a woman who is an employee, an employee in a work situation where all disabilities are covered under a company plan that provides income maintenance in the event of medical disability; that her particular period of disability, when she cannot work because of childbirth or anything related to childbirth is excluded. It is narrowly drawn and would not give any employee the right to obtain income maintenance as a result of the pregnancy of someone who is not an employee.
MR. HATCH. OK; or the effects on other people as a result of the pregnancy of any female employee.
MR. WILLIAMS. Exactly. It does not.
MR. HATCH. So the Senator is satisfied that, though the committee language I brought up, "woman affected by pregnancy" seems to be ambiguous, what it means is that this act only applies to the particular woman who is actually pregnant, who is an employee and has become pregnant after her employment?
MR. WILLIAMS. Exactly.
Legislative History at 80.[3]
Finally, Senator Javits, another primary sponsor of the Senate bill stated that the bill "represents only basic fairness for employees who became pregnant." Legislative History at 67.
Plaintiffs point to several remarks made during the floor debate of the Senate bill, which they claim, support their position that Congress intended the PDA to reach *158 health plans for employees' spouses. They cite remarks of Senator Bayh where he states:
Third, the legislation will not require that companies provide the same pregnancy coverage for the dependents of male employees that it provides to its female employees. There remains the question, however, of whether dependents of male employees must receive full maternity coverage if the spouses of female employees are provided complete medical coverage. While it is difficult to second-guess the courts, I feel that the history of sex discrimination cases under the 14th amendment in addition to previous interpretations of the Title VII regulations relating to the treatment of dependents will require that if companies choose to provide full coverage to the dependents of their female employees, then they must provide such complete coverage to the dependents of their male employees.
Legislative History at 75.
However, apart from the obvious fact that these remarks reflect the opinion of only one member of Congress, it appears that Senator Bayh's conclusion that plans like defendant's are discriminatory is not based on his view of the PDA but rather on then-existing law. Thus, it is not an accurate reflection of Congressional intent. Plaintiffs also point to the remarks of Senator Cranston in support of their position. However, in the passage they cite, Senator Cranston admits that the Senate Report left the question of dependents' medical benefits open, and expresses his "own view" that a plan like defendant's would violate the PDA. Legislative History at 131. Inasmuch as this passage reflects only Senator Cranston's personal view and reinforces the impression that Congress left the issue before the Court unaddressed, the Court does not believe it helpful to plaintiffs.[4]
Thus, in light of the legislative history of the PDA, the Court does not believe that Congress intended the PDA to be applicable to health plans for employees' dependents. It seems that Congress' concern in enacting the PDA was to ensure that employers do not discriminate against employees on the basis of pregnancy disabilities. Therefore, the Court holds that the PDA does not apply to the facts of this case. The PDA applies only to employees and applicants for employment.
This conclusion, however, does not finally resolve this matter, for it must still be determined what law does apply to the facts of this case and whether defendant's plan discriminates on the basis of sex under the applicable law. The applicable law is easy to determine. In the Senate Report on S.995 (later enacted as the PDA) the committee stated that "the basic purpose of this bill is to protect women employees, it does not alter the basic principles of Title VII law as regards sex discrimination." Legislative History at 42-43. Thus, with the exception of the narrow application of the PDA to employees and applicants for employment, pre-existing Title VII law governs here. Id. at 43. Therefore, the Court must examine this case in light of General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), bearing in mind, of course, that the PDA overturned Gilbert with respect to employees and applicants for employment. Because this matter concerns dependents of employees and not employees, Gilbert is as vital with respect to this matter as it would have been before the enactment of the PDA.
In Gilbert the Court held that an employer's disability plan that excluded pregnant workers from coverage was not gender based, and thus not discriminatory. The Court reasoned that the plan "divide[d] potential recipients into two groupspregnant *159 women and nonpregnant persons. While the first group is exclusively female, the second includes members of both sexes." 429 U.S. at 135, 97 S.Ct. at 407 (quoting Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974)). Likewise, in this matter defendant's program divides recipients into two groupsemployees with pregnant spouses and employees without pregnant spouses. The first group is exclusively male but the second group consists of members of both sexes. Thus, following the reasoning of Gilbert, the Court holds that defendant's plan does not discriminate on the basis of sex.
Plaintiffs would have the Court rule in their favor on the basis of EEOC Interpretative Guidelines that take the position that plans such as defendant's violate Title VII. 44 Fed.Reg. 23804, 23807. However, these Guidelines adopt an attenuated view of the PDA which the Court has rejected in this memorandum. The Court is certainly free to reject these Guidelines as they are interpretative only and do not have the binding force of law. Albemarle Paper Co. v. Moody, 422 U.S. 405, 431, 95 S.Ct. 2362, 2378, 45 L.Ed.2d 280 (1975). The Court may take into account the Guidelines and accord them the deference it considers due them, depending upon their thoroughness, the validity of the reasoning behind them, and any other factors weighing for or against their persuasiveness. Gilbert, 429 U.S. at 142, 97 S.Ct. at 411. Pursuant to the Court's independent analysis of the PDA undertaken in this memorandum, the Court believes it should accord no deference to the Guidelines and in fact considers them to take a position contrary to the intent of Congress.
Therefore, and in accordance with the foregoing,
IT IS HEREBY ORDERED that defendant's motion to dismiss the International Union and the Local Union be and is DENIED.
IT IS FURTHER ORDERED that defendant's motion for summary judgment on the issue of liability be and is GRANTED and plaintiff's motion for summary judgment on the issue of liability be and is DENIED.
IT IS FURTHER ORDERED that plaintiffs' cause of action be and is DISMISSED with prejudice at plaintiffs' cost.
NOTES
[1] The case defendant cites in support of its position that the Local Union can only intervene is totally inapposite. In EEOC v. Missouri Pac. R. R., 493 F.2d 71, 75 (8th Cir. 1974), the court held that parties who wish to join after a charging party has filed suit are relegated to intervention. Here, all plaintiffs joined in bringing this action.
[2] The pertinent provisions of the PDA are as follows:

(k) The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work....
42 U.S.C. § 2000e(k).
[3] Plaintiffs make the argument that this discussion relates solely to income maintenance plans as opposed to health benefit plans. Were the Court to adopt this position it would lend to the inference that Congress sought only to overturn the specific result in General Electric v. Gilbertwhich dealt with income maintenance plansand did not intend to address the question of health benefit plans. However, the Court does not believe the Act is this narrow. Defendant points out that income maintenance plans can only apply to employees, and that if the two Senators really had been confining their dialogue only to income maintenance plans, the entire conversation would have been an exercise in redundancy. At any rate, the EEOC attempted to draw this distinction before the court in Lockheed Missiles, supra; that court rejected the EEOC's argument stating that it did not appear that Congress was distinguishing between health benefits and income maintenance plans. Lockheed Missiles, No. C-80-3833 WWS (N.D.Cal. August 7, 1981). The Court agrees with this analysis and rejects plaintiffs' argument to the contrary.
[4] Plaintiffs also refer to remarks made during the House and Senate hearings on the legislation that became the PDA. However, these remarks for the most part reflect the testimony of witnesses and opponents to the bills and thus are not accurate indicia of Congressional intent. Other statements are simply inconclusive. See Hearings on H.R. 5055 & H.R. 6075, Subcomm. on Employment Opportunities, 95th Cong., 1st Sess. 120-121, 187-88 (1977); Hearings on S.995, Subcomm. on Labor, 95th Cong., 1st Sess. 397, 404-08, 412-14 (1977).